Good morning. You may be seated. And we'll be ready to hear argument now in our first case, Osmon v. United States. Whenever you're ready, Mr. Corbett. Good morning, Your Honors. May it please the Court, I was here about five months ago before a panel. I recall that. The question there was whether Bivens Remedies would apply against TSA screeners. Here we are today with FTCA Remedies. That case five months ago, Dyer v. Smith, 21-1508. The court held that no, Bivens Remedies are not available against TSA screeners. And in fairness, the court's hand was pretty much swayed by Egbert v. Boulay, where the Supreme Court sharply... Now, how does that case impact this case? Well, luckily that case doesn't. Okay, I didn't think it did. I was wondering why you started out that way. The reason I'm starting out that way, Your Honor, is this is the last chance at a remedy in any court for people that are injured, intentionally injured, by screeners of the U.S. Transportation Security Administration. Well, the Eighth Circuit and the Third Circuit ruled in your favor, didn't they? Yes. On this issue. So this will be the third chance. That's correct. There are only two courts that have produced binding decisions, presidential decisions. Those are the Eighth and the Third, the Third Resentment Bank. Those decisions are recent. They were well argued. The only court to hold otherwise was the Eleventh Circuit in an unpublished, non-binding, non-presidential opinion against a pro se litigant who didn't even get oral arguments. The quality of that whole debacle is clearly not even close to on par with Pellegrino and the Third before the court that there is no other option. If the court does not reverse here, people who are broken limbs, sexually assaulted, whatever the injury, no matter how serious it is, will have zero remedy in front of the courts. Can I ask you about the scope of your argument? What about the sort of, I'm gonna give you the two hypos, but there's a million of them, this holding that you can sue, that your client can sue a TSA officer necessarily entail that someone who alleges that an FDA inspector roughed somebody up when inspecting a slaughterhouse can sue the FDA? And so either it does it, and if it does not, why does it not? I don't think it necessarily does. To be honest, I don't I don't think there really should be a problem if an FDA inspector comes and roughs someone's up that someone should have an injury, a remedy at law. That said, TSA is exactly the kind of hands-on job where Congress intended to waive that sovereign immunity. So Congress said investigative or law enforcement officers. They clearly meant something more than just law enforcement officers, and it makes sense. When was this provision enacted? 70s? So, I mean, you just said Congress clearly intended. I mean, it seems to me that the clear, the fairest description is that Congress did not contemplate TSA inspectors because TSA hadn't happened yet, and there was no TSA. I mean, what do we do with the fact that I think that maybe the most honest answer is what did people in Congress think about TSA inspectors is no one was thinking about TSA inspectors when they passed this statute. Absolutely, TSA inspectors in general, but my point is that the kind of people that have hands-on searches where they're putting their bodies, their hands on the bodies of the members of the public as a general matter, those are the kind of people that are likely to commit intentional torts, and those are the kind of people that I think that Congress intended. Yes, you're absolutely right that TSA did not exist when the statute was passed for another 20, 30 years. Well, the entire idea, I mean, I'm one of the people who's barely old enough to remember this, but like you used to be able to get on a plane without anyone really doing anything to you at all, right? I mean, so it's not just TSA, and it's not even just modern TSA. It's that this notion that in order to get on a plane, you have to consent to going through a metal detector or a thermal imager or somebody patting you down. That was just not something that existed in the 70s. I'm not saying that means you lose. I just mean it creates a hard question about what to do with that fact. Definitely, that's absolutely right, and I think your honor touches on another major distinction, which is the regulation of a well-regulated industry and the enforcement of those regulations is wholly different from the regulation that requires anyone who wants to travel by air, which is something that's just just plain a requirement in 2023 for most people at some points. They're forced to go through this TSA screening. They have no choice, so they don't get to somehow intelligently decide to waive or not waive their right to some kind of remedy if this happens. If they want to go see grandma before she dies, they got to go take a plane. That's the way that life works these days, and it's not fair for these people not to have some kind of remedy. Mr. Corbett, though, but don't we have to get past the fundamental question of whether or not there was an objection? I mean, you've started out by saying this is my last chance to get an answer, but is it really even your first chance because can you even raise the question? The court could definitely bypass the main issue by deciding that there wasn't a sufficient objection. As to that issue, I think circuit precedent is clear that one has to simply raise an objection, not an argument. The question is whether the court was put on notice. It has to be more than a generalized objection, so how was your objection more than merely a if the court is on notice and that requires a specific objection. Here, I don't think there was any question as to what was being objected to. The objection was to the magistrate judge's determination that TSA screeners do not qualify as investigative or law enforcement officers. It seems to me the court below wanted argument to supplement that objection. Was that the only issue in the case? At the moment, yes, that was the only issue on the entire decision by the magistrate judge. The objection was I disagree with everything that the magistrate judge said about why I'm not allowed to sue TSA. Well, it was just one issue, though. No, that's what I'm saying. It wasn't like the magistrate judge made a report recommendation on like 12 different issues and your client said I object to the magistrate's decision. It was that the magistrate judge made one holding on one issue and you said I object to that. Exactly, Your Honor. It was one very distinct point of law. We're that potential hurdle. It's simply whether or not the one question of statutory interpretation. So, you know, forcing people to give arguments in these kind of objections would essentially just require them to copy and paste their original brief into this objection format. I'm not sure why the court would want someone to do that. It would seem to me to be duplicative. The court was already quite unnoticed as to what my argument was. Well, and you did actually say what your argument was and what the government's argument was. You did lay out both positions on page two of a two-and-a-half page objection. Yeah, I believe it was pretty clear, but I'm a little bit biased. But compared to the cases that the court has held where someone did not make a specific enough objection, it seems to be night and day. To be honest, this seems to be something that's used to throw pro se litigants out of the Court of Appeals rather than to take an attorney who's actually made an objection and say, well, you know, you magistrate judges sometimes issue reports and recommendations that make like 15 different recommendations. And it seems to make total sense to say you can't just say, I object to the magistrate judge's report and recommendation. The district judge is entitled to say, well, what part of it do you object to? I mean, I'm not saying that's your case, but it seems like there is some merit in that. Absolutely, Your Honor. Absolutely. Mr. Corbett, just to hit this one more time, I think even in your brief you cite to a case from a district judge in South Carolina where he apparently did it right because the really unrelated to what was being discussed in the opinion, in the Wozni case. Correct. Those cases that threw it out either had nonsense that had nothing to do at all with the merits issue that was being discussed, or maybe there was a decision with 15 different arguments and they addressed 14 and forgot the 15th. Those are the cases where a court has held that no, an objection wasn't made. Here where there's one issue, it was clearly identified. There's been no court that's said that this wasn't enough. Just a little attempt to pat myself on the back, that's all. You're doing great. Oh, is that you? I'm sorry, I'm trying not to draw too much attention to the issue. Sorry, it's early, Your Honor. It's all right. I'm from California. At 630, I have my times. Shall I return to the merits? Yeah, on the merits, have there been, are you aware of any other types of administrative officers that have been found not to fall under this law I know the FDA or USDA inspectors is a common one. I think... And how do you distinguish FDA inspectors from TSA officers? So I think I'd go back to that difference first and foremost about their job role having nothing to do with putting their hands on people, where you're gonna get battered, you're gonna get false imprisonment. If an FDA inspector goes to a slaughterhouse and someone ends up battered, there's something went seriously wrong. Where do I put that in the language of the statute? The language of the statute doesn't say anything about putting your hands on people. It says executing searches. Well, the government's whole idea is that we should delve into congressional intent here because it says execute searches. TSA screeners execute searches. I agree. I think the law is clear. Anyone who executes searches should be covered. But that would then, but that, but that gets you to the potentially covering FDA inspectors who also seem to execute searches. And I don't have a problem with that. I think that it would make sense and I think that the amount of courthouse door it would open would be so narrow it almost never be used. Well, to stop for the Tort Claims Act doesn't have to be within the scope of employment. And I mean, if an FDA inspector at a slaughterhouse batters somebody, that surely was not within the scope of their employment. And although that certification can be challenged in practice, I've done it, it doesn't work so well. Here we have a case where a TSA screener is accused of sexually assaulting my client at a checkpoint. And when they were searching their person. So here it would be within the scope of their employment. That's the difference between, I'm actually trying to help you, but maybe you don't. I'm with you. I mean, there's no question as to the scope of employment here because the government has not denied Westfall certification. But the search that was supposed to be done had limits. This TSA screener exceeded the boundaries of her authority by miles. And it was quite a video. According, in fairness to the government, according to your client's allegation, the TSA screener exceeded their authority by miles. And one of the, it's entirely likely that one of the reasons the government grants Westfall certification is that it's entirely possible the defendant does not agree that they exceeded their authority by miles. And the government would say, we should not make government officials have to defend themselves personally in situations where people accuse them of doing things that maybe they did or didn't do. Yeah, I think if the Westfall Act were modified to require the government's issue based on the allegations and the complaint based rather than just saying no. Oh no, but that wouldn't make any sense from the government's perspective because that could suggest that you could deprive a government employee of protection from liability simply by asserting they did something. Oh, I mean, no one has that protection in court, I guess, other than I don't want to get too far. Sure, but this is all against a backdrop of assumption. If it wasn't for the FTCA, you could not sue this person at all. There would be no way to sue this person. Well, they'd be sued in state court if it wasn't for this set of laws that channeled review into the federal courts and move jurisdiction against the government. You know, in this case, we have a video that pretty clearly shows that this person severely deviated from their job duties. And, you know, it's, it is very, very weird where the government is doing their job based on their own determination that nothing wrong happened. And essentially, the whole idea behind the FTCA was to open the door to lawsuits against federal government employees. And with these exceptions, they're now using it to deny people a right to a remedy, to take the courts out of it. That's the exact opposite of the statute. Mr. Corbett, but isn't the government going to get up here and say, but we're not doing searches. We're just simply screening. And so since we're simply screening, why are you trying to pull us into the provisions that deal with law enforcement, which are doing criminal searches? I think the Pellegrino court said it best that TSA screenings are searches as a matter of ordinary meaning of the word, as a matter of Terry versus Ohio, as a matter of they went through all of these ways in which TSA screenings constitute searches. And I'm certain I quoted that in my brief. To say that TSA screenings are not searches is just a bastardization of the word. It's pretending that you're not doing something that you are in order to escape liability. I beg the court not to let the TSA do that to, you know, a police officer can do the same. I'm not searching you. I'm just screening you to make sure that you don't have any drugs. It's drug screening. But isn't that the fundamental of this case that they say I just don't fit into the statute? And so don't they have to walk through the statute to say where they don't fit? And isn't that one of the arguments that I don't fit because I'm neither law enforcement and I'm not an investigative officer and I don't do searches and I'm not seizing anything either. Yeah, I think they are investigative officers. I think that's the whole deal. I think they are doing searches. And with respect to the government, their argument that they don't seize is just simply based on false premise effect. If you walk through the TSA right now with a handgun, they're not handing it back to you while they call the police to come arrest you. They're seizing it just because they don't hold on to the evidence permanently. TSA says that they don't seize anything. That's not really relevant. They don't have to seize. They just have to search. And in fairness, they don't even have to search. They have to be authorized to execute searches, right? Absolutely, Your Honor. I see I have 35 seconds left. I'll yield it back. Thank you. All right. Thank you, Mr. Aguilar. Whenever you're ready. May it please the Court, Daniel Aguilar for the United States. I'm happy to walk through the statute, as we do in our brief, on the multiple textual indicia that we think give us the best reading of the statute for why TSA screeners don't fit within the law enforcement proviso. But before that, I just want to highlight the background rules of statutory construction that we're working with here. This is an argument that there has been a waiver of sovereign immunity such that TSA screeners fit within the law enforcement proviso. And as this Court and the Supreme Court have consistently recognized, those waivers of sovereign immunity must be clear and unequivocal. And if there's any ambiguity, any plausible reading of the statute that might... Do you think this statute is ambiguous? I'm saying that that's the minimum backdrop. We think we have the best reading, that the best reading overall... Do you think it's ambiguous? I think to the extent that you think reasonable people could come to different conclusions, you'd point to the divided opinions... Okay, but does the government think that this statute is ambiguous or unambiguous? So I guess our position is, best read, it supports the notion that TSA screeners do not fit investigative and law enforcement officers as defined in the statute. To the extent the question on ambiguity is one of, do you think reasonable people can come to different conclusions? I agree, there it's ambiguous, if that's the definition we're working with. And that's a definition that the Supreme Court in FAA versus Cooper explained is applicable for a waiver of sovereign immunity. So to the extent you think, well, there's a reading reasonable under which the United States has not waived sovereign immunity, and another one under which maybe it has, then there has not been a clear and unequivocal waiver. What does the word search mean? So I think search there is in context. I'm not trying to argue that this isn't a search under the Fourth Amendment. Our argument is that this is a term about executing, or as... So it is a search. Executing search. It's a search for Fourth Amendment purposes, Your Honor. We're not trying to qualify that. Indeed, we explain like, why it would actually... We say this is, a TSA pat down is unambiguously a search for Fourth Amendment purposes. Yeah, we're not contesting that. But the language of the statute isn't just conduct search. It's authorized to execute, right? Authorized by law to execute searches, seize evidence, or make arrests for violations of moral law. What does or mean? Or is in the disjunctive. And so what the Supreme Court explained in Dolan, right, is when you have a list, even with a disjunctive like or, you apply usual canons of statutory construction saying we read these things to be... So or means and, to you, in this context. Authorized to do any one of these by law, then you qualify as the law enforcement officer. So aren't TSA officers authorized by law to search? Not to execute searches for violations of criminal law. So if I can just... What are they doing? How does that not violate the last antecedent canon? You're essentially trying to take language from the first of three clauses and say that the language at the end of the third clause, right? That doesn't that violate the last antecedent canon? No, it's applying the postpositive modifiers the Supreme Court did in Facebook versus, I apologize for mispronouncing the name, to quote and reading law. It's where you have a parallel construction where the postpositive modifier can apply to all than it does. And I think that's also true for a Clark versus Martinez as well. So it's making arrests for violations of federal law, right? That's clear. It can apply in criminal violations, seizing evidence for violations of criminal law, right? That makes sense. That's what FBI agents do, executing searches for violations of federal law. And that's usually what's done in the criminal context, right? Is you execute a search pursuant to a warrant or on probable costs. And that's how it's consistent. What are they executing the search for? So again, we take issue with whether they're executing a search, but what TC screeners. Okay. I don't know what they're doing then if they're not executing a search, what are they doing? What they're not open people search for violation of federal law. What they are doing is making sure that prohibited items that can pose a danger to the aircraft or passengers, which would be in violation of the law. If you have a prohibited item, it's not necessary to take it in your luggage or whatever. It's a violation. If I can just explain, it's not necessarily for violations of federal law. There are items that are completely legal to possess. Right. Like shampoo, baseball bats, or even scissors. We don't obviously want to let those through the checkpoints. So just as an on the ground matter, and this is the uncontested evidence that's in the record, pages 45 to 44 to 45. If somebody tries to go through the screening checkpoint with a prohibited item, the TSA screener says, you can't do that. We complete the screening. You have a choice. Now you can abandon that item. You can complete screening and walk it back to your car. You can give it to somebody else who's on the public side of the checkpoint, but it can't make it past here. There's not necessarily going to be any civil or criminal consequences for that. It's just the item can't go through. Okay. So let me ask you that. Let's take the scissors example is bringing a scissors onto an airplane. I'm not asking about bringing it through the screening. I'm asking about bringing it onto the airplane. Is that a violation of federal law? It potentially could be. There could be consequences. So, okay. So, so, so your argument is it, it would be. So in other words, if the screening was happening at the threshold to the jet bridge, right. I know this is not how we do TSA screening, but imagine we did TSA screening at the threshold to the jet bridge. Like once I walked through the metal detector, I am on the airplane. Right. If we assume technologically, we could do that. Assume hypothetically, technologically, we could do that. Um, if they were searching me for scissors at that spot, would that be a search for violation of federal law? Because after all, if I'm not detected by the TSA search, my literal next step is going to be onto an airplane in possession of a scissors. I don't think so for this reason, your honor, it's the, it's the purpose of the search is because the purpose of the search and the either for TSA. So TSA just gets to decide whether or not they're covered by this statute by declaring what the purpose of what they're doing is. No, your honor. I, if I want to be clear, I think it's to the powers that Congress vests in certain officers. So take different TSA officers, right? Air marshals or TSA criminal investigators. Those people are authorized by law to make arrests, seize evidence, execute searches for violations of criminal law. They, they help bring criminal prosecutions. They arrest people. Those clearly are law enforcement officers, but TSA screeners are doing is something different. They're not the ones who go out and arrest people or pursue civil violations. Those are done by different officers. It's investigative or law enforcement officers too. And so I think there's a good example of this. We were wondering, you know, is there some investigative search that's not criminal? Or sorry, is there an investigative search that doesn't necessarily authorize the arrest power or something else like that? And the Pellegrino dissent cites this. It's a seventh circuit decision called Bunch versus United States. It's a case where an ATF investigator has statutory authority to enter into arson sites if there's reason to believe an explosive was used. And what the seventh circuit said is that person very well might be a person who's authorized by law to execute searches for violations of criminal law. They're allowed to conduct a search essentially based on probable cause. And even though they don't have arrest power or seizure power, they do have that power. They may well be- Can I just go back to, to build off Judge Thacker's question. Give me an example in the government's view of somebody who is an investigative officer or a law enforcement officer who blah, blah, blah, blah, blah. So that implies that there is some human being on earth who is an investigative officer, but not a law enforcement officer who is covered by this provision. In the government's view, who is that person? As I was saying, I think this is the- ATF person is not a law enforcement officer? An ATF investigator, right? This isn't, this isn't an ATF officer who goes out and arrests people. They're a lab technician. They are conducting investigations about whether or not certain fires were explosives or arson. They don't have any authority to arrest. They don't have any authority to seize evidence. I don't think. It was just the ability to enter onto the site and execute that search. And so most of the time, Your Honor, this is going to be one where Congress wants somebody to have all of this criminal authority. That sounds like a TSA officer. They don't have a authority to arrest people or seize evidence, but they do have authority to search. But there, it's for a violation of federal law, right? Yeah. I can't, I know you've tried to explain that several times. Let's try again for me to understand it. How are TSA officers not authorized to search? They're not authorized to execute searches. As we know- Okay, how are they not authorized to execute searches? Because as we explained, and as, you know, the dissenters in Pellegrino and Judge Grinder and Iverson explained, that term is normally used for executing a search pursuant to a warrant or probable cause. And where it's used elsewhere in the United States code, it's done for the same thing. It's executing searches matched up against the other powers, making arrests, seizing evidence, traditional law enforcement functions, applying the canon, I think it's called a Nelson-Torreso Cease. So because it's not attached to a search warrant, it's not a search. And it's not based on probable cause. Even though the word warrant isn't in the proviso, it's just search. So I think this is a place, Your Honor, where as Judge Grinder was saying, we're not trying to read the statute in little bites, right? We're trying to read it as a whole. And I think you're right. You can go through this and say, well, we think it's a search. We don't think execute ads that much. We don't think that these other powers are necessarily limiting this. We don't think for violations of federal law, it necessarily maps on or maybe it does. I agree. You can do that. That's what the Pellegrino majority did. I'm not saying that that's an implausible reading of the statute. I don't think it's the best reading. Can I go back then to your statement at the beginning of this, that everybody agrees that we have to read this statute with a big thumb on the scales against the government? I mean, I have a couple of thoughts on that. Let's start with, let's start with a case that's not cited in your brief. How is that not wildly inconsistent with Millbrook versus United States, which says we don't come up with all kinds of fake ways of reading the statute. We read the statute to say what the statute says. No, I think Millbrook is entirely consistent with her position. Millbrook was taking, if I'm remembering correctly, a Bureau of Prisons guard, a statutory authority to make arrests. And then the question- There's a way to characterize what the decision that's reversed in Millbrook did. That sounds a lot like what you're asking us to do, which is to say, look, I get on the face of the statute, it does not expressly say this. And I get that there are individual parts of the statute that could be read to say this, but if you do it against this backrop overlay of what the normal presumptions would be, we think on balance, it's not super clear that Congress meant to not cover this thing. And the Supreme Court, in their opinion by Justice Thomas said, that is not how we construe statutes. We construe statutes to mean what they say and say what they mean. And there is no basis for all of these, like when we say execute searches, it normally means a law enforcement officer and all of these things that are not within the text of the statute. And Millbrook says that is not what we do, including under this statute. So why is, why is that not really bad for you? It's not really bad for us. I think it's consistent with it. There it's undisputed. They were a law enforcement officer, right? And the only question was- Wait, I just want to make sure we have that. So it is undisputed. The government, I thought you were- In Millbrook. In Millbrook, it was undisputed that the Bureau of Prisons officer was a law enforcement officer. I think Millbrook at the beginning notes that this is entirely undisputed and that's because they have statutory authority to make arrests. And so in Millbrook, the question was if that person commits an intentional tort, that's not part of executing a search, seizing evidence, or making an arrest, is the United States still liable? And what the court held is there's no textual evidence that there's any additional limitation here. They don't have to actually have been executing a search when they did the bad thing. It's just the person who's authorized by law to do it. They are a law enforcement officer. So we're past that. Then the only question is, have they committed an assault, battery, false imprisonment, the rest? And the Supreme Court said, that's what the waiver applies to. That's clearly satisfied here. And so I think that's consistent with our understanding of it has to be a clear and unequivocal waiver. There, the Supreme Court found it. It didn't think it- Well, but the Supreme Court in Millbrook doesn't say there is a clear and unequivocal waiver. They say the best reading of the statute is this is covered. And that's why if it's the best reading and there's no other plausible reading, I agree. Well, those are different things there. No, I mean, I guess maybe part of the question we're coming up is what first, is there a presumption? What way does the presumption go and then see, I guess, what is the strength of the presumption? Because, you know, on one hand you have something like the rule of lenity where we do the absolute best we can, at least unless Justice Gorsuch gets his way, but under the rule of lenity as it currently exists, we do the best we possibly can to read the statute. And only if at the very end of the process, we're like, I don't frigging know. I'm totally confused. Then we apply the rule of lenity. At least that's what the government always argues about how the rule of lenity works. It comes in at the very, very end when a court has no clue what the right answer is. But then at the other end you have things like the clear statement rule for abrogating sovereign immunity where the Supreme Court has essentially said, like unless you literally say the word state and unless you literally say the word sovereign immunity, there is no unmistakably clear. And I guess so one of the questions is where on that continuum does the government contend the presumption is here? Is it the like rule of lenity, do the best we can and we have no idea? Or is it, you have to say the word state and unless you say the word state, it's ambiguous. So this is on the side of the waiver of sovereign immunity. So how is that not completely inconsistent with Dolan? If I can explain, Dolan's about how do we construe a reclamation of sovereign immunity? USC 1346, that's the FTCA says, United States is liable in tort. It's a sweeping waiver. The only question in Dolan was whether leaving a package on a door that causes a slip and fall accident, right? Negligence is accepted under that postal provision. So it's saying we're considering an exception, a reclamation of sovereign immunity. We review that de novo, best reading. Here, the exception is the intentional torts exception. Without the law enforcement provisor. It's the clawback of the clawback. And look, I know that the dissenters in the third and eighth circuit relied on that. I will confess. I read Dolan and I, I don't see where in Dolan it says. That to me is an effort to basically limit Dolan, but it doesn't seem to me to have any basis in Dolan. I don't see anything in the Supreme Court's opinion in Dolan that says when it comes to the clawback of the clawback, we go back to this unmistakably clear waiver. No, there was no reason for the Supreme Court to consider that because it wasn't in the case. What Dolan says is when we consider an exception, we give it it's best in reading. I believe that's at the best in Ferris reading. That's a page 402 or 408. It's at the very end of the opinion. And here to agree, there's also some broad language in Dolan that just says we give the FTCA. It's broad. It's fair reading. Not that we give the, like there's some language in Dolan that just suggests we just construe this statute. It says, it says the waiver in 1346 is broad and sweeping. We agree with that. It's also very obvious that if there was no law enforcement proviso, this claim could not be brought because it's a claim for assault and battery. And let me take you back maybe to the facts of this case for a second is I understand it. She was going through the screening process and there was something flagged as a possibility of some item at that point in time you stopped screening and you started to execute a search, didn't you? Because it's, so tell me why here it is. Someone's going through a metal detector and therefore something is flagged as possibly being there. Why? And at that point it doesn't convert to something else. You're saying your argument has been, well, we're not executing a search, but in fact the pat down was in fact a search. You weren't at that point. It was no longer suspicious list. There was no longer no reason to look for something. There was a reason to look. Tell me why at that point it didn't. Tell me why your argument still holds water at that point. Well, one, I don't take a plaintiff to making that narrow of an argument. I take it to be making that TSA screeners, even without pat downs are executing searches. And we think that's wrong. But as to your point, your honor, at that point it's still not for a violation of federal law. We aren't looking for it. That's where I guess I'm not following you. Judge Huygens asked you the question. He said, what happens if this whole screening or searching process is happening right before you get on the plane? It just happens that this occurs some distance away. Your point is, well, it's not a violation of federal law, but something was flagged and you were looking for something to determine whether or not it was a prohibited item. And that item could have been a violation of federal law. Tell me what you were looking for. Anything that can pose a safe safety risk to the aircraft or its passengers, which could have been a violation of federal law. And so as you, if you look at JA 45, um, that page, it's the uncontested declaration here. If the TSA screener sees something that might be illegal contraband, what they do is they don't seize it. They don't conduct a further search of it. They call over the law enforcement officer that's stationed at that area. That person authorize that process involves them seeing something here. It's not about seeing now you're actually looking for it. You're patting down, you're reaching and grabbing for it. At that point in time, this isn't looking at something on a screen and identifying an object and saying, gee, that looks like a prohibited item. Let's go get law enforcement to go and seize it. That's not what's happened here. Help me with the facts of this case, how your argument holds water. So again, on the facts of this case, what they're doing is they're conducting a screening to make sure that there's nothing that's poses a danger of safety to the aircraft or its passengers here. If there's a prohibited item, they're not going to seize it. They're not going to bring a criminal prosecution, but they're going to do is tell that person, you can't bring that on the plane. You have several choices. Now you can abandon it, take it back to your car, et cetera. That's on the ground, what TSA does. And so the question is, I think as we were getting to originally as this argument started, what if it's a bomb? Can't take it back to your car? No, at that point you call over law enforcement, right? And that's the purpose of the law enforcement. But they were looking for something that may be a violation of law. Again, we dispute this point because we read that as modifying it to talk about criminal context. And I think if you read the Pellegrino dissent, Judge Grinder's dissent in Iverson and the 11th circuit's decision in Corbett, this is all talking about the same thing. But I know like let's take a step back out of the TSA context. Can I just ask you a factual question based on something your friend on the other side said? He said, so say they do find a scissors or a gun. Like let's say I go through TSA security with a gun. You're not telling me that the TSA screener, you say they don't seize it, but your friend on the other side says they don't give it back to me, right? What they do is they hold it and then they call the guy with the gun to come get it. Right. They, why isn't that a seizure? In the moment when they don't give it back to me, when they call the guy with the badge of the gun, why isn't that a seizure? So one, he hasn't made an argument that they are law enforcement officers for the purposes that they seize evidence of that argument appeared nowhere in the district court or in their brief, but also they aren't the ones seizing it. Otherwise they would be seizing every piece of luggage that goes through the x-ray machine. What happens is they call the law enforcement officer who does have authority. So what is happening during the 15 minute period when they will not give me my thing back and they're calling for the person who with the gun, that's not a seizure. What is, what is happening during that 15 minutes? It's part of the screening process as the ninth circuit recognized in its decision in United States versus a CAI. That's normal screening. It's not, it's totally reasonable. It's not a seizure arrest. But if I could just take one step back at the end, outside of the TSA context, there is no other court of appeals decision that says administrative searches qualified for this proviso. You can look to the fifth circuit's decision in first national bank that talks about EEOC administrators who can inspect records. They were held not to be law enforcement officers. You can look to the second circuit's decision in Wilson versus United States where it was parole officers who have authority to enter into a parolee's apartment and seize evidence with the parolee's consent held not to be law enforcement officers. I know my friend on the other side says, we can limit this to physical touches. The problem is there's no textual basis for that. And if this is a policy discrement about what we should be allowing sovereign immunity to be waived for, that's best left to Congress. Thank you. All right, Mr. Corbett. And it was after this, I'll be flying to California to repeat this whole thing with my colleague over here in the ninth circuit. Oh, both of y'all are going to the ninth circuit after this. Yes, you're on. If I go to the airport with this in my pocket and I managed to pass through security because they don't find it, I have violated federal law. Federal law prohibits anyone from circumventing TSA security procedures. TSA security procedures prohibit this item from going through. It is a violation of federal law. TSA does nothing but look for violations of federal law. The distinction here is that my colleague wishes to add a criminal statute that prohibits, or is it, what is the nature of this? It would be a civil penalty. The rule against circumventing TSA security procedures. It's a civil penalty. It's not a criminal matter. My colleague wishes to insert the word criminal before searches. And that's just simply not what's in the statute. If the search is the word warrant after search or the word warrant and probable cause and whatever, and my client wants to do all this, but when I suggest that maybe we should look a little bit further behind the intent of the statute, I'm told, no, we got to, we can't do that here. It's not fair. And this, this brings us back to the jet bridge hypothetical that was brought before. We don't need to make it onto the airplane. It's a violation of federal law to step one foot past the TSA checkpoint with this bottle of water. And I represent clients who have been fined for walking one foot past the checkpoint without TSA permission. That is a fact. One more point I wanted to bring up is the lab technician hypothetical where there's some ATF lab tech that has that maybe is, is an investigative officer. TSA lab tech is not going to commit an intentional tort. When Congress passed this law, they did not have lab techs in mind. They had in mind people who would be on behalf of the government in some kind of quasi law enforcement capacity, touching the people. That's exactly what TSA is. Thank you, Your Honors. All right. Did you have any other questions? All right. Thank you both for your arguments. As you may know, this court has a long history of coming down from the bench and greeting counsel, which we suspended during the pandemic. But today, after 1,131 days, we're going to come down and greet counsel.
judges: Stephanie D. Thacker, Toby J. Heytens, Joseph Dawson III